IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SUSAN BECK, | ) | |
| | ) | |
| Plaintiff, | ) | 10-CV-2570 JTM/KMH |
| | ) | |
| vs. | ) | Case No. 2010_____ |
| | ) | |
| COFFEYVILLE MEDICAL REGIONAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Susan Beck, by and through her attorneys, SLOAN, EISENBARTH, GLASSMAN, MCENTIRE & JARBOE, L.L.C., and for her claims against defendant, states and alleges the following:

## JURISDICTION AND VENUE

1. This is an employment based upon and arising under the Family and Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. §2601 *et seq.*; the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. §12101 *et seq.*; the Employment Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. §1001 *et seq*; and the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. §621 *et seq.*

2. This court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 29 U.S.C. §1331, since these claims arise under federal statutory law.

3. All of the unlawful acts and practices set forth below were committed in the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff Susan Beck is a registered nurse and former employee of Coffeyville Medical Regional Center. Plaintiff is a citizen and resident of the City of Coffeyville in Montgomery County, Kansas.

5. Defendant Coffeyville Regional Medical Center ("CRMC") is a Not-For-Profit Corporation in active and good standing, and may be served with process by service on its Chief Executive Officer, Jerry Marquette at 1400 W. 4th Street, Coffeyville, Kansas and by service upon the Chairman of the Board of Directors, Dr. Garrick Rettele at 1400 W. 4th Street, Coffeyville, Kansas.

## FACTUAL ALLEGATIONS

6. Plaintiff began working for CRMC in March 2002 and is a registered nurse.

7. In April 2009, Plaintiff was working as a staff registered nurse in the surgery department at CRMC.

8. On or about March 2, 2009, Plaintiff had surgery on her gall bladder. On or about March 16, 2009, she was released by her doctor to return to work with a lifting restriction.

9. On or about March 17, 2009 Plaintiff advised Teresa Barker, R.N., the surgery director at CRMC, that she could return to work on light duty, as she had a lifting restriction for four (4) weeks. Ms. Barker was provided a copy of the doctor's release.

10. Ms. Barker advised that there was no work available to Plaintiff with those restrictions and told her that she would need to get a full release before she could return to work.

11. Ms. Barker instructed Plaintiff to take two weeks off, followed by a vacation and then to "talk her doctor into dropping the restrictions".

12. Other similarly situated employees were given light duty assignments, including one employee who was allowed to work for over eight months in this capacity. Another similarly situated employee was given a light duty assignment on April 9, 2009, the day after Plaintiff was terminated.

13. On March 25, 2009, Plaintiff begged her doctor to give a full release so that she could report to work and agreed with him that she would request help for all heavy lifting so she could return to work.

14. On or about March 25, 2009, Plaintiff's doctor sent a full release to CRMC advising that Plaintiff could return to work on March 30, 2009.

15. On March 28, 2009, Plaintiff received a message on her answering machine from CRMC advising that she needed to report on March 30, 2009 at 7:00 a.m. to the Human Resources Department in order to complete a physical exam known as the OPC.

16. Plaintiff called Alice Kirkland, RN, an employee at CRMC to see what the OPC was, and was advised that as of March 26, 2009, CRMC had a new policy which required employees returning to work after being off for more than three days due to medical or other issues to submit to physical examination prior to returning.

17. Failing the OPC would subject the employee to termination, but could result in light duty, if available.

18. Plaintiff contacted her team leader, Sarah Hay, R.N., and after expressing her concerns about the OPC, was advised that all questions related to the OPC must be referred to Ms. Barker.

19. Plaintiff then contacted Ms. Barker and expressed that she was very upset about this new requirement and had questions regarding the OPC and how it was being administered. Ms. Barker advised that the Human Resources Director, Becky McCune would contact her to discuss the issue.

20. On March 30, 2009, Plaintiff appeared as instructed in order to complete the testing. She expressed to other employees, including others who were there to complete the test, that she was very angry and upset about having to complete the test immediately upon returning to work after having major surgery and that she felt it was an unfair requirement for those returning to work under these conditions. Plaintiff also advised that she felt the OPC discriminated against older employees.

21. Prior to taking the test, the employee was required to provide an entire medical history. The testing itself consisted of a series of tests which required heavy lifting.

22. Plaintiff passed the test but continued to insist that the OPC was unfair and discriminatory and maintained her request to meet with Ms. McCune to express her concerns about the OPC.

23. On April 8, 2009, Plaintiff worked her regular shift and was relieved by another nurse who advised that she was needed in the Human Resources Department. Plaintiff assumed the purpose of this meeting was to address her concerns about the OPC.

24. At the meeting, Plaintiff was advised by Ms. Barker and Ms. McCune that her employment was terminated. The reason provided was that Plaintiff was being disloyal to CRMC by talking to other employees about the OPC and her complaints about the discriminatory nature of the OPC and CRMC's policy.

25. Plaintiff was not given any verbal or written warnings or reprimands as required by CRMC's own policy.

26. CRMC was aware that Plaintiff had reached the age of sixty, and in fact, in January 2009, requested Plaintiff take early retirement. Plaintiff advised at that time that she intended to work for at least three or four years more and was not interested in leaving CRMC.

27. Plaintiff was perceived by CRMC to have a hearing disability.

28. In February 2009, shortly before her gall bladder surgery, Ms. Barker advised Plaintiff that other employees were complaining that they had to repeat things because Plaintiff could not hear them. Plaintiff was advised that she would be relocated within the surgery department to the recovery section.

29. Plaintiff's termination came three months before she was to become fully vested in the benefit welfare plan offered by CRMC.

30. Prior to April 2009, CRMC had never indicated that Plaintiff's work was inadequate. In fact, Plaintiff chaired and participated on various committees at CRMC, instructed the department on various programs, and was a volunteer for CRMC at various public functions.

## COUNT I – INTERFERENCE
## IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

31. Plaintiff incorporates by reference the above numbered paragraphs 1 through 30 as though fully set forth herein.

32. Plaintiff qualifies as an "eligible employee" within the meaning of the FMLA.

33. Plaintiff's medical condition meets the definition of a "serious health condition" within the meaning of the FMLA.

34. Plaintiff provided certification issued by her health care provider, which indicated that she suffered from a serious medical condition and was unable to perform all the functions of her job, but that she could return to work with reasonable limitations.

35. CRMC unlawfully denied Plaintiff's request for leave under the FMLA. CRMC interfered with the exercise of Plaintiff's rights under the FMLA.

36. As a result of CRMC's illegal and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, and emotional pain and suffering.

WHEREFORE, Plaintiff prays for judgment against CRMC in excess of $100,000.00, consisting of back pay, reinstatement or front pay, prejudgment and post-judgment interest, compensatory damages, attorney fees, litigation expenses and such further relief as the Court deems just and proper.

## COUNT II – RETALIATION
## IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

37. Plaintiff incorporates by reference the above numbered paragraphs 1 through 36 as though fully set forth herein.

38. Plaintiff engaged in a protected act by indicating her intent to assert her rights under the FMLA.

39. CRMC retaliated against Plaintiff because she engaged in a protected activity, thereby retaliating against her.

40. As a result of CRMC's illegal and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, and emotional pain and suffering.

WHEREFORE, Plaintiff prays for judgment against CRMCs in excess of $100,000.00, consisting of back pay, reinstatement or front pay, prejudgment and post-judgment interest, compensatory damages, attorney fees, litigation expenses and such further relief as the Court deems just and proper.

## COUNT III – RETALIATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

41. Plaintiff incorporates by reference the above numbered paragraphs 1 through 40 as though fully set forth herein.

42. Plaintiff meets the definition of "a qualified person with a disability" within the meaning of the ADA.

43. CRMC retaliated against Plaintiff because of her known and/or perceived disability, in violation of the ADA.

44. CRMC retaliated against Plaintiff because she opposed the acts and practices of CRMC which were unlawful under the ADA.

45. As a result of CRMC's illegal and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, and emotional pain and suffering.

WHEREFORE, Plaintiff prays for judgment against CRMC in excess of $100,000.00, consisting of back pay, reinstatement, or front pay, prejudgment interest, compensatory damages, attorney fees, litigation expenses and such other and further relief as the Court deems just and proper.

## COUNT IV – INTERFERENCE
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

46. Plaintiff incorporates by reference the above numbered paragraphs 1 through 45 as though fully set forth herein.

47. Plaintiff meets the definition of "a qualified person with a disability" within the meaning of the ADA.

48. CRMC interfered with Plaintiff's exercise of her rights under the ADA and with her right to aid and encourage others to exercise their rights under the ADA.

49. As a result of CRMC's illegal and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, and emotional pain and suffering.

WHEREFORE, Plaintiff prays for judgment against CRMC in excess of $100,000.00, consisting of back pay, reinstatement, or front pay, prejudgment interest, compensatory damages, attorney fees, litigation expenses and such other and further relief as the Court deems just and proper.

## COUNT V – DISCRIMINATION
## IN VIOLATION OF THE EMPLOYMENT RETIREMENT INCOME SECURITY ACT

50. Plaintiff incorporates by reference the above numbered paragraphs 1 through 49 as though fully set forth herein.

51. Plaintiff meets the definitions of a "participant" and of a "qualified beneficiary" within the meaning of ERISA.

52. Plaintiff was three (3) months from becoming fully vested in a welfare plan as defined under ERISA when her employment was terminated.

53. CRMC discriminated against Plaintiff by terminating her employment for the purpose of interfering with the attainment of the rights to which she was to become entitled under the plan.

54. As a result of the CRMC's illegal and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, and emotional pain and suffering.

WHEREFORE, Plaintiff prays for judgment against CRMC in excess of $100,000.00, consisting of unpaid benefits to which she is entitled including that related to back pay, reinstatement or front pay, prejudgment and post-judgment interest; compensatory damages; attorney fees; litigation expenses and such further relief as the Court deems just and proper.

## COUNT VI– INTERFERENCE
## IN VIOLATION OF THE EMPLOYMENT RETIREMENT INCOME SECURITY ACT

55. Plaintiff incorporates by reference the above numbered paragraphs 1 through 54 as though fully set forth herein.

56. Plaintiff meets the definitions of a "participant" and of a "qualified beneficiary" within the meaning of ERISA.

57. Plaintiff was three (3) months from becoming fully vested in a welfare plan as defined under ERISA when her employment was terminated.

58. CRMC interfered with Plaintiff's rights under ERISA by unlawfully terminating her employment.

59. As a result of the CRMC's illegal and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, and emotional pain and suffering.

WHEREFORE, Plaintiff prays for judgment against CRMC in excess of $100,000.00, consisting of unpaid benefits to which she is entitled including that related to back pay, reinstatement or front pay, prejudgment and post-judgment interest; compensatory damages; attorney fees; litigation expenses and such further relief as the Court deems just and proper.

## COUNT VII– DISCRIMINATION
## IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

60. Plaintiff incorporates by reference the above numbered paragraphs 1 through 59 as though fully set forth herein.

61. Plaintiff is a member of a protected class as she is over the age of forty.

62. Plaintiff is an employee as defined under the ADEA.

63. CRMC is an employer as defined under the ADEA.

64. Plaintiff discriminated against Plaintiff because of her age.

65. As a result of the CRMC's illegal and intentional conduct, Plaintiff has suffered serious economic losses, loss of enjoyment of life, anger, and emotional pain and suffering.

WHEREFORE, Plaintiff prays for judgment against CRMC in excess of $100,000.00, consisting of back pay, reinstatement, or front pay, prejudgment interest,

compensatory damages, attorney fees, litigation expenses and such other and further relief as the Court deems just and proper

DATED this 20th day of October, 2010.

>Respectfully submitted:
>
>SLOAN, EISENBARTH, GLASSMAN,
> McENTIRE & JARBOE, L.L.C.
>534 S. Kansas Avenue, Suite 1000
>Topeka, KS 66603
>Office: (785) 357-6311
>Fax: (785) 357-0152
>
>BY:s/Shaye L. Downing
>   Shaye L. Downing, KS #22152
>   sdowning@sloanlawfirm.com
>   Stephen D. Lanterman, KS #18844
>   slanterm@sloanlawfirm.com
>   ATTORNEYS FOR PLAINTIFF

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

>Respectfully submitted:
>
>SLOAN, EISENBARTH, GLASSMAN,
> McENTIRE & JARBOE, L.L.C.
>534 S. Kansas Avenue, Suite 1000
>Topeka, KS 66603
>Office: (785) 357-6311
>Fax: (785) 357-0152
>
>BY:s/Shaye L. Downing
>   Shaye L. Downing, KS #22152
>   sdowning@sloanlawfirm.com
>   Stephen D. Lanterman, KS #18844
>   slanterm@sloanlawfirm.com
>   ATTORNEYS FOR PLAINTIFF

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff requests that Kansas City, Kansas, be designated as the place of trial in the above captioned matter.

                Respectfully submitted:

                SLOAN, EISENBARTH, GLASSMAN,
                 McENTIRE & JARBOE, L.L.C.
                534 S. Kansas Avenue, Suite 1000
                Topeka, KS 66603
                Office: (785) 357-6311
                Fax: (785) 357-0152

                BY: s/Shaye L. Downing
                   Shaye L. Downing, KS #22152
                   sdowning@sloanlawfirm.com
                   Stephen D. Lanterman, KS #18844
                   slanterm@sloanlawfirm.com
                   ATTORNEYS FOR PLAINTIFF